

# NUMBER 13-11-097-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## EX PARTE JAIME ENRIQUE GARCIA

---

**On appeal from the 206th District Court
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Vela, and Perkes
Memorandum Opinion by Justice Vela**

The grand jury of Gwinnett County, Georgia, indicted applicant, Jaime Enrique

Garcia, for the offense of trafficking in cocaine. *See* GA. CODE ANN. § 16-13-33 (2010).

On demand by the Governor of Georgia, the Governor of Texas issued a governor's

warrant, ordering Texas law-enforcement officials to arrest Garcia, who lived in Hidalgo County, Texas, and deliver him into the custody of Georgia authorities. Seeking to avoid extradition to Georgia, Garcia filed an application for writ of habeas corpus.[1] Following a hearing on the writ, the trial court denied the requested relief. On appeal, Garcia raises four issues: (1) whether the trial court abused its discretion in admitting the governor's warrant into evidence; (2) whether the trial court failed to consider whether the extradition documents were facially in order; (3) whether Garcia is the person named in the demand for extradition; and (4) whether Garcia is a fugitive. We affirm the trial court's order.

## I. APPLICABLE LAW

The language of the Extradition Clause of the United States Constitution[2] "is 'clear and explicit'" and "creates a mandatory duty to deliver up fugitives upon proper demand. . . ." *Puerto Rico v. Branstad*, 483 U.S. 219, 226 (1987) (citing *Michigan v. Doran*, 439 U.S. 282, 286 (1978)). The Uniform Criminal Extradition Act (UCEA)[3] "establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding. . . . [and] applies to persons at liberty as well as to persons in prison." *Cuyler v. Adams*, 449 U.S. 433, 436 n.1 (1981). Following the language of the Extradition Clause of the United States Constitution, the UCEA speaks in terms of a

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 51.13, § 10 (West 2006) (stating, in relevant part, that "if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. . . .").

[2] The Extradition Clause art. IV, § 2, cl. 2, of the United States Constitution reads: "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

[3] The UCEA is codified in Texas at article 51.13 of the Texas Code of Criminal Procedure (West 2006).

2

demand by the executive of a state placed on the executive of another state for delivery of a fugitive from justice. *See* TEX. CODE CRIM. PROC. ANN. art. 51.13, § 2 (West 2006). Within the bounds of the constitution and applicable law, the UCEA requires the governor of a sending state to have a fugitive arrested and delivered to the executive authority of the receiving state. *Id.*

A habeas corpus proceeding challenging extradition is "intended to be limited in scope in order to facilitate a swift and efficient transfer of custody to the demanding state." *Ex parte Potter*, 21 S.W.3d 290, 294 (Tex. Crim. App. 2000). Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide: (1) "whether the extradition documents on their face are in order"; (2) "whether the petitioner has been charged with a crime in the demanding state"; (3) "whether the petitioner is the person named in the request for extradition"; and (4) "whether the petitioner is a fugitive." *Id.* (citing *Doran*, 439 U.S. at 289).

"An appellate court reviewing a trial court's ruling on a habeas claim must review the record evidence in the light most favorable to the trial court's ruling and must uphold that ruling absent an abuse of discretion." *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006) (citing *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003)); *see Ex parte McWilliams*, 272 S.W.2d 531, 531 (Tex. Crim. App. 1954). The applicant bears the burden to prove he or she is entitled to the relief sought by a preponderance of the evidence. *Kniatt*, 206 S.W.3d at 664.

3

**A. Admissibility of the Governor's Warrant**

In issue one, Garcia contends the trial court abused its discretion in admitting the governor's warrant into evidence because the State did not lay the proper foundation for its admission. During the habeas corpus hearing, the State offered the original governor's warrant along with its attached documents into evidence. Defense counsel objected on the basis that the State did not "lay the foundation for the record as to the authenticity of this document. . . ." The State responded that "under Rule 902, it's a document under seal from the Governor's office. . . ." The trial court overruled the objection and admitted the governor's warrant and the attached documents into evidence as State's exhibit 1.[4]

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). "The trial court abuses its discretion when the decision lies outside the zone of reasonable disagreement." *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Texas Rule of Evidence 901 provides, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

---

[4] State's exhibit 1 is part of the appellate record.

claims."  TEX. R. EVID. 901(a).  However, rule 902 provides, in relevant part:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
>
> **(1) Domestic Public Documents Under Seal.**  A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency, thereof, and a signature purporting to be an attestation or execution.

TEX. R. EVID. 902(1).

Here, the governor's warrant on its face included the seal of the State of Texas as well as the following language:  "IN TESTIMONY WHEREFORE, I have hereunto signed my name and caused to be affixed the Great Seal of State, at Austin, . . . ."  The signatures of Texas Governor Rick Perry and the Texas Secretary of State, Esperanza "Hope" Andrade, appear beneath this attestation.  Accordingly, the governor's warrant constituted a domestic public document under seal, and the State was not required to present extrinsic evidence of authenticity as a condition precedent to admissibility.  *See* TEX. R. EVID. 902(1).  We hold the trial court did not abuse its discretion in admitting the governor's warrant and the documents attached thereto into evidence.  Issue one is overruled.

### B. Whether the Extradition Documents Were Facially in Order

In issue two, Garcia contends the extradition documents were not facially in order. We decide this issue by comparing the extradition documents to the requirements of the UCEA.  *See Rayburn v. State*, 748 S.W.2d 285, 288–89 (Tex. App.—Tyler 1988, no

5

pet.).[5]

Section 3 of the UCEA states in relevant part:

> No demand for the extradition of a person charged with crime in another State shall be recognized by the Governor unless in writing, alleging, . . . that the accused was present in the demanding State at the time of the commission of the alleged crime, and that thereafter he fled from the State, and accompanied by a copy of an indictment found or by information supported by affidavit in the State having jurisdiction of the crime, or by a copy of an affidavit before a magistrate there, together with a copy of any warrant which issued thereupon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the Executive Authority of the demanding State that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole.  The indictment, information, or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of the State; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the Executive Authority making the demand; . . . .

TEX. CODE CRIM. PROC. ANN. art. 51.13, § 3.

In this case, the governor's warrant, which included the requisition demand from the Governor of Georgia, recites that Garcia was charged with the offense of trafficking in cocaine, that he was present in Georgia when the alleged crime was committed, that he thereafter fled from the justice of Georgia, and that he is now in Texas.   The requisition demand is supported by (1) a certified copy of the bench warrant, (2) a certified copy of the felony indictment substantially charging Garcia with the crime of trafficking in cocaine, which is a violation of the laws of Georgia, (3) the affidavit of an assistant district attorney for Gwinnett County, Georgia, (4) Garcia's fingerprint cards, and (5) the district attorney's application for requisition.

---

[5] *See Ex parte Molina-Neave*, No. 04-06-00648-CR, 2007 WL 1268819, at *3 (Tex. App.—San Antonio May 2, 2007, pet. dism'd) (mem. op., not designated for pub.).

By this same issue, Garcia argues he has not been charged with a crime in the demanding state. The extradition documents referred to in the requisition demand reflect Garcia was charged with trafficking in cocaine, alleged to have occurred in the State of Georgia on or about November 1, 2007, and that he fled the State. A bench warrant for failure to appear, listing the pending charge against Garcia, was issued on September 5, 2008. Because Garcia has not been convicted, the requisition demand recites Garcia is a fugitive from justice and contains all the other allegations required by section 3 of article 51.13 of the Texas Code of Criminal Procedure. *See id.* We hold that the extradition documents are facially in order. Issue two is overruled.

**C. Whether Garcia is the Person Named in the Demand for Extradition**

In issue three, Garcia contends he is not the person named in the demand for extradition.

**1. Background**

During the State's case-in-chief at the habeas hearing, the trial court admitted the governor's warrant into evidence as State's exhibit 1, which included a set of fingerprint cards. Eduardo Aleman, a crime-scene specialist with the Hidalgo County Sheriff's Office, testified he had been conducting fingerprint comparisons for about seventeen years. Prior to this habeas hearing, Aleman fingerprinted Garcia and compared Garcia's known fingerprints to the fingerprints attached to the governor's warrant. He testified that Garcia's known fingerprints "were identified as the same" as those fingerprints included with the governor's warrant.

7

Garcia testified he had been in Gwinnett County, Georgia and that the case against him in that county had been dismissed. He left Georgia in September 2008 and returned to Hidalgo County. He was unaware that he was "a felon fleeing from justice[.]" On cross-examination, when the prosecutor asked Garcia, "And you would admit that you're the same person that's named in the governor's warrant, correct?", he said, "Yes, sir."

### 2. Analysis

"In order to challenge 'identity', the accused must raise the issue of his identity as the fugitive named in the Governor's Warrant." *Ex parte Scarbrough*, 604 S.W.2d 170, 174 (Tex. Crim. App. 1980). Here, Garcia testified during the habeas hearing that he is the person named in the governor's warrant. Moreover, the State, by comparing Garcia's known fingerprints to the fingerprint cards included in the governor's warrant, established that Garcia was the person named in the warrant. Accordingly, we hold that the State showed that Garcia was the person named in the governor's warrant. Issue three is overruled.

### D. Status as a Fugitive

In issue four, Garcia contends he is not a fugitive from justice. "A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Doran*, 439 U.S. at 288–89. Garcia contends this showing was overcome with regard to his status as a fugitive because the charges against him in Gwinnett County, Georgia were dismissed.

8

The UCEA does not formally define "fugitive." *See* TEX. CODE CRIM. PROC. ANN. art. 51.13, § 1. However, in *Ex parte Robertson*, the applicant contended he was not a fugitive from justice. 151 Tex. Crim. 635, 636–37, 210 S.W.2d 593, 594 (1948). In explaining the term "fugitive," the court of criminal appeals stated:

> [I]f a person was present in the demanding state at the time it is alleged an offense was committed and leaves that state thereafter for any reason, whether connected with the alleged offense or not, and is found in the sending state, he is a fugitive from justice and subject as such to extradition.

*Id.*; *see* TEX. CODE CRIM. PROC. ANN. art. 51.13, § 2 (stating, in relevant part, that "it is the duty of the Governor of this State to have arrested and delivered up to the Executive Authority of any other State of the United States *any person charged in that State with treason, felony, or other crime, who has fled from justice and is found in this State*") (emphasis added).

During the habeas hearing, the prosecutor asked Garcia, "[Y]ou would agree that according to the governor's warrant, there are charges pending against you in Gwinnett County, Georgia, correct?", he replied, "Yes, sir." Even though Garcia testified that the case against him in Gwinnett County had been dismissed, when the prosecutor asked him, "And so you would agree that the indictment [i.e., the indictment attached to the governor's warrant] comes after the dismissal, . . . that you were speaking of, correct?", he said, "Yes, sir." In addition, the documentation attached to the governor's warrant showed that Garcia was present in the demanding state (Georgia) at the time it was alleged an offense was committed, that he committed the offense, that he left that state thereafter, and that he is currently in the sending state (Texas). Therefore, Garcia is a fugitive from justice and subject as such to extradition. *See Ex parte Robertson*, 151

9

Tex. Crim. at 636–37, 210 S.W.2d at 594.   Issue four is overruled.

### III. CONCLUSION

For the reasons discussed above, the trial court did not abuse its discretion in concluding the governor's warrant for the extradition of Garcia to Georgia is valid. Accordingly, we affirm the trial court's order denying habeas corpus relief.


ROSE VELA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of September, 2011.